Honorable Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JONATHAN NELSON and MARGO NELSON, individually and on behalf of their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>SPECIALIZED LOAN SERVICING, LLC, a foreign limited liability company,<br><br>Defendant. | Case No. 3:20-cv-05461-RBL<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE**<br><br>**NOTE ON MOTION CALENDAR: June 19, 2020** |

## MOTION

Defendant Specialized Loan Servicing, LLC ("SLS" or "Defendant") hereby moves this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' Complaint with prejudice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs' underlying Complaint is based entirely on the inaccurate representation that SLS cannot collect certain installment payments outside of six years due to Washington law's six year

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 1**

#75100722_v1

statute of limitations. In other words, Plaintiffs assert that SLS is not entitled to the entire amount due and owing on Plaintiffs' loan because Plaintiffs first defaulted on the loan over six years ago.

That assertion is unsupported by law. Based on Plaintiffs' meritless assertion, they purport to bring the following claims: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of the FDCPA as a per se violation of Washington's Consumer Protection Act ("CPA"); (3) violation of Washington's Collection Agency Act ("CAA") as a per se Violation of the CPA; (4) violation of the CPA; and (5) negligence. All of Plaintiffs' claims fail and should be dismissed with prejudice.

First, Washington case law is clear that the statute of limitations does not begin to run on enforcement of an installment loan until either six years after the loan matures or six years after the lender affirmatively acts to accelerate the debt. Here, Plaintiffs' loan does not mature until 2031 and SLS did not accelerate the debt, therefore, the statute of limitations has not accrued or expired. Even if SLS did accelerate the amounts due and owing, Washington law does not hold that SLS cannot collect the entire amounts due and owing after acceleration on payment defaults outside of six years. Finally, Washington law is clear that statute of limitations can only be used as a defense and not to bring forth a cause of action. All of Plaintiffs' causes of action fail and should be dismissed with prejudice because SLS is entitled to collect all of the amounts due and owing. Furthermore, any correspondence from SLS outlining that debt is not a violation of any law.

Finally, even if Plaintiffs could demonstrate that SLS is not entitled to the entire amounts due and owing on Plaintiffs' loan, Plaintiffs' claims would still fail. First, Plaintiffs' FDCPA claim fails because any purported communication from SLS is not considered debt collection under the FDCPA and therefore, does not violate the FDCPA. Further, Plaintiffs' property or business was not injured to support a claim under the CPA or CAA. Even if it was, there is no causal connection between any alleged injury suffered by Plaintiffs and any allegation against SLS. Finally, SLS does not owe a duty to Plaintiffs outside of its contractual duties, so Plaintiffs' negligence claims fail. Because it is

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 2**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

#75100722_v1

impossible for Plaintiffs to assert a legal cause of action against SLS, Plaintiffs' Complaint must be dismissed with prejudice.

## II.     FACTS

The material facts are undisputed and set forth in this paragraph. On October 10, 2006, Plaintiff Jonathan Nelson executed a Note in favor of Countrywide Bank, N.A.in the amount of $77,800.00 (the "Note") for the property located at 19701 SE 38th Way, Camas, Washington 98607 (the "Property"). *See* Compl. ¶ 3.3. The underlying Note is attached hereto as Exhibit "A". On or about October 10, 2006, the Plaintiffs executed a Deed of Trust securing the Note (the "Deed of Trust"). *See* Compl. ¶ 3.3. The Deed of Trust is recorded in the Official Records at 4236812 of the Public Records of Clark County, Washington. The Deed of Trust is attached hereto as Exhibit "B". The maturity date on the Loan is November 1, 2031. The underlying Note and Deed of Trust (collectively the "Loan") are in a second lien position on the Property. *See* Compl. ¶ 3.3. The Plaintiffs defaulted on the underlying Note and Deed of Trust on September 1, 2011. *See* Compl. ¶ 3.6. In March 2015, Defendant SLS began servicing Plaintiffs' Loan. *See* Compl. ¶ 3.9. On April 16, 2019, SLS sent a "Default Notice and Intent to Foreclose" to the Plaintiffs. *See* Compl. ¶ 3.10. The Default Notice and Intent to Foreclose is attached hereto as Exhibit "C".[1] To date, SLS nor any prior servicer have initiated a foreclosure action against the Plaintiffs or accelerated the amounts due and owing on Plaintiffs' Loan.

## III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal

---

[1] The underlying Note, Mortgage, and Default Notice and Intent to Foreclose attached hereto are referred to in Plaintiffs' Complaint. Further, they form the basis of Plaintiffs' claims against SLS. Therefore, this Court can and should consider these documents in their entirety. *See Leadbetter v. Comcast Cable Communications, Inc.,* No. C05-0892RSM, 2005 WL 2030799 (W.D. Wash. Aug. 22, 2005) *citing Venture Associates v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir. 1993).

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 3**

#75100722_v1

theory, the absence of sufficient facts alleged under a cognizable legal theory, or both. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Under Rule 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Dismissal under Rule 12(b)(6) is appropriate where the factual allegations do not raise the right to relief above mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id*. Indeed, the Supreme Court clarified after *Twombly* that "the tenet that a court must accept all of the allegations contained in [a pleading that states a claim for relief] is inapplicable to legal conclusions," and emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must show "more than the mere possibility of misconduct," and "only a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

In *Ashcroft v. Iqbal*, the court explained how trial courts should evaluate pleadings:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*.; *see also Gossen v. JPMorgan Chase Bank,* 819 F. Supp. 2d 1162, 1167 (W.D. Wash. 2011) (to survive a motion to dismiss, "reasonable inferences from [non-conclusory factual content] must be plausibly suggestive of a claim entitling the pleader to relief").

///

///

///

///

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 4**

#75100722_v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## IV.   ARGUMENT

### A.   All of Plaintiffs' Claims are Based on a "Statute of Limitations" Assertion Which Fails as a Matter of Law—All of Plaintiffs' Claims Thus Must Be Dismissed with Prejudice.

Plaintiffs allege several causes of action including violations of the FDCPA, CAA, CPA, and negligence based on the unsupported assertion that because the statute of limitations has run on certain payments outside of six years to date, SLS is not authorized to collect or attempt to collect those amounts due and owing on their Loan. Specifically, Plaintiffs' allege that they defaulted on the underlying Loan on September 1, 2011 and that any payments due between September 1, 2011 and April 1, 2014 are uncollectible. *See* Compl. ¶ ¶ 3.6, 3.21. Plaintiffs' claims are unsupported by Washington law as set forth below.

First, Plaintiffs cite to *Westar Funding, Inc. v. Sorrels,* 157 Wn. App. 777 (Div. 2 2010) to support their assertion that SLS is not entitled to all of the amounts due and owing. *Westar* holds that RCW 4.16.040 imposes a six-year statute of limitations for an action upon promissory notes and deeds of trust. In *Westar*, the court considered the statute of limitations on a loan that matured twelve years prior to the creditor's attempt to collect the total amounts due and owing. The court held that the creditor had only six years from maturity to collect on the note and deed of trust. Plaintiffs' Loan, however, does not mature until 2031. Therefore, based on the *Westar* opinion, SLS can collect the total amounts due and owing on Plaintiffs' Loan until 2037.

Plaintiffs further cite to *Edmundson v. Bank of Am., NA,* 194 Wn. App. 920, 927 (2016) wherein the Edmundsons (the borrowers) attempted to enjoin foreclosure on their property based on the proposition that the lien of the deed of trust to the property was no longer enforceable. First, *Edmundson* differentiates a demand note, where the statute of limitations expires six years after execution of the note, and an installment note, where the note is payable in monthly installments and identifies a maturity date. The *Edmundson* court states that when recovery is sought on an obligation

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 3:20-
CV-05461-RBL - PAGE 5

payable by installments, "the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." This enables a lender to foreclose on a loan even if the first default is outside six years because it can foreclose on any subsequent default within the preceding six years if the Loan was not accelerated. *See* 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338 (4th ed. 2004) ("A separate cause of action arises on each installment, and the statute of limitations runs separately against each, except where the creditor has a right to accelerate payments on default and does so."); 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 20.10, at 61 (2d ed. Supp. 2018) ("Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can be begun within six years of any particular installment default and the amount due can be the then principal amount owing."). Therefore, the court did not allow the Edmundsons to enjoin foreclosure on the property because even though their first missed payment was outside of the six year statute of limitations, their subsequent payments were not.

Further, there was no evidence of acceleration of the note. Here, there is no dispute that Plaintiffs' Note is an installment note like the Loan in *Edmundson* because it states it is payable in monthly installments and contains a maturity date. Further, Plaintiffs have not alleged that SLS accelerated the amounts due and owing on their Loan. Therefore, the statute of limitations cannot bar enforcement of the deed of trust on the basis that the lender accelerated the debt (declared the entire unpaid balance on the note due) because SLS did not accelerate the debt. *Id.* at 931.

Acceleration must be invoked clearly and unequivocally by some affirmative action. *Merceri v. Bank of N.Y. Mellon,* 4 Wn. App. 2d 755, 759, *review denied* 192 Wash. 2d 1008 (2018). The only factual allegation that may be construed as an acceleration is the Default Notice and Intent to Foreclose, however, a default notice or notice of intent to accelerate is not an affirmative election to accelerate the amounts due and owing when it contains conditional language like SLS's Default

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 6**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204
Telephone: 503.243.2300

#75100722_v1

Notice and Intent to Foreclose. *Id.* at 691. For example, the notice in *Merceri* stated that the borrowers mortgage payments "will be accelerated" with the full amount remaining accelerated. *Id.* at 758. By comparison, SLS's Default Notice and Intent to Foreclose states that failure to pay the total amount due "may" result in acceleration. The facts alleged and case law presented in the Complaint demonstrates that Plaintiffs' claims fail because their loan has not matured and was not accelerated. Therefore, the statute of limitations did not expire on any payments.

Even if Plaintiffs' Loan had been accelerated, equity establishes that SLS would still be entitled to collect all of the amounts due and owing on Plaintiffs' Loan. *See, e.g.*, *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 434–35 (2016) ("if an obligation that is to be paid in installments is accelerated, the entire remaining balance becomes due"); *Herzog v. Herzog,* 23 Wash. 2d at 387 ("in absence of a specific promise to pay the interest at a different time from that fixed for the payment of the principal, the principal and interest become due at the same time"). Courts across the country are in accord. *See In re Eastman*, 588 B.R. 600, 603 (Bankr. D. Colo. 2018) (creditor may accelerate installment note and demand payment of full unpaid balance notwithstanding expiration of the statute of limitations on individual installments); *Gonzalez v. Fed. Nat'l Mortgage Ass'n*, 3D17-1246, 2018 WL 3636467, at *3 (Fla. Dist. Ct. App. Aug. 1, 2018) (creditor "*not* barred from seeking a final judgment that includes amounts due outside the five-year statute of limitations") (emphasis in original); *Green v. Specialized Loan Servicing LLC*, 17-15681, 2019 WL 1111405, at *4 (11th Cir. Mar. 11, 2019) (statute of limitations does not reduce amount mortgagee can recover); *In re Hall*, 265 B.R. 435, 440 (Bankr. W.D. Mo. 2001) (permitting foreclosure on entire amount due under note though some missed installment payments were outside the statute of limitations); *Hollings v. Hollings,* 8 N.J. Super. 552, 554 (Ch. Div. 1950), aff'd, 12 N.J. Super. 57 (App. Div. 1951) (it is inequitable to allow a creditor to quiet title a property, even if the statute of limitations expired on a lender's ability to foreclose, without the creditor first paying the lien in full); *see also* 31 RICHARD A. LORD, WILLISTON ON CONTRACTS § 79:17, at 338 (4th ed. 2004) ("A separate

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 7**

#75100722_v1

cause of action arises on each installment, and the statute of limitations runs separately against each, except where the creditor has a right to accelerate payments on default and does so.").

Finally, Washington law is clear that "[t]he statute of limitations is to be employed as a shield, and not as a sword; as a means of defense, and not as a weapon of attack." *State v. Lorenz,* 22 Wash. 289, 297 (1900). "The purpose of statutes of limitations is to shield defendants and the judicial system from stale claims." *Burien Town Sq. Condominium Ass'n v. Burien Town Sq. Parcel 1, LLC,* 416 P.3d 1286, 1290 (Wash. Ct. App. 2018) citing *Burns v. McClinton,* 135 Wash. App. 285, 293 (2006). In this case, Plaintiffs are attempting to use the statute of limitations to bring five separate causes of action against SLS. Therefore, all of Plaintiffs' causes of action fail and should be dismissed with prejudice because they are based upon the erroneous assertion that SLS is not entitled to collect or attempt to collect the entire amounts due and owing on the Loan.

1.   Plaintiffs' Claim Alleging SLS Violated the Fair Debt Collection Practices Act Fails and Should Be Dismissed with Prejudice.

Plaintiffs claim SLS is a debt collector under the FDCPA and violated 15 U.S.C. § 1692d, e(2)(5)(10), and f(2) by overstating the amounts due and owing. First, it is entirely unclear what "debt collection" efforts Plaintiffs are alleging violate the FDCPA. Plaintiffs merely allege a violation but fail to point to a single communication between SLS and Plaintiff that supports their claim. Accordingly, the underlying claim must be dismissed. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The pleading must show "more than the mere possibility of misconduct," and "only a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

Second, the only communications from SLS to Plaintiffs referenced in Plaintiffs' Complaint are the alleged mortgage statements, reinstatement figures, and the Default Notice and Intent to Foreclose. The contents of these letters do not violate the FDCPA.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 3:20-
CV-05461-RBL - PAGE 8

1  To the extent Plaintiffs allege the mortgage statements sent by SLS violate the FDCPA,

2  Plaintiffs' Complaint fails. *See* Compl. ¶ 3.11-3.15, 3.18-3.19. Mortgage statements sent by mortgage

3  loan servicer to mortgagor did not constitute unlawful debt collection communication under the

4  FDCPA even if the statements demanded a payment amount including allegedly time-barred payments.

5  *Green v. Specialized Loan Servicing LLC*, 766 Fed. Appx. 777 (11th Cir. 2019).

6  To the extent Plaintiffs allege the Default Notice and Intent to Foreclose sent on or around April

7  16, 2019 violates the FDCPA, Plaintiffs' claim fails because sending "the notice of default and notice

8  of sale are not attempts to collect 'debt' as the term is defined by the FDCPA." *Vien-Phuong Thi Ho v.*

9  *ReconTrust Co., NA* ("*Ho*"), 858 F.3d 568, 571–72 (9th Cir. 2016), *cert. denied sub nom. Ho v.*

10  *ReconTrust Co.*, 138 S. Ct. 504 (2017). The Ninth Circuit reasoned that under the FDCPA, "debt" is

11  synonymous with "money," and because the "object of a non-judicial foreclosure is to retake and resell

12  the security, not to collect money from the borrower," actions taken to facilitate non-judicial foreclosure

13  do not give rise to liability under the FDCPA. *Id.*

14  To the extent Plaintiffs allege the reinstatement quote sent by SLS violates the FDCPA,

15  Plaintiffs' Complaint fails. Reinstatement demands are communications to advise Plaintiffs regarding

16  the amounts that would need to be paid to avoid foreclosure and how such payments would be handled.

17  Even if the reinstatement demands may have prompted Plaintiffs to pay money they owed on their

18  Property, it was the lien on the property that would have prompted such payment, not SLS's action of

19  sending these non-judicial foreclosure communications. *See Ho*, 858 F.3d at 572 ("The prospect of

20  having property repossessed may, of course, be an inducement to pay off a debt. But that inducement

21  exists by virtue of the lien, regardless of whether foreclosure proceedings actually commence. The fear

22  of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but

23  that doesn't make the guy with the tow truck a debt collector."); *see Dowers v. Nationstar Mortg., LLC*,

24  852 F.3d 964, 970 (9th Cir. 2017) (explaining that the Ninth Circuit rejected the argument that "[the

25  defendant's] notices amounted to debt collection because they had the effect of prompting [the plaintiff]

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 3:20-
CV-05461-RBL - PAGE 9**

to pay money she owed, explaining that it was the lien that prompted [the plaintiff] to pay off her loan, not [the defendant's] actions."). Even if SLS included unlawful fees or costs in the reinstatement demands it "does not transform these loan statements into debt collection either." *See Martinez v. Trinity Fin. Servs., LLC, No*. 17-CV-03612-LB, 2017 WL 4071386, at *4 (N.D. Cal. Sept. 14, 2017) (holding that the plaintiffs' allegations that a letter from the loan trustee included "inflated amounts" that the plaintiffs owed were insufficient because plaintiffs did not plausibly allege "how the addition of interest and other fees, even if improper, transforms a communication sent as part of the non-judicial foreclosure process into something beyond the enforcement of a security interest.") (quoting *Fitzgerald v. Bosco Credit, No.* 16-cv-01473-MEJ, 2017 WL 3602482, at *6 (N.D. Cal. Aug. 21, 2017) ); *Park v. Lehman Bros. Bank, FSB*, No. 11-55473, 2017 WL 3309928, at *1 (9th Cir. Aug. 3, 2017) (the defendant "cannot be held liable under the FDCPA because there is no allegation of debt collection" where the plaintiffs "allege that defendants misrepresented the amount they owed in the October 2010 notice of sale.").

Finally, SLS cannot be held liable under the FDCPA because the above referenced mortgage statements, reinstatement letter, and Default Notice and Intent to Foreclose did not misstate the debt because as explained above, Plaintiffs' statute of limitations argument fails. There is no legal principle that prohibits collection of those sums via the nonjudicial enforcement of a security instrument. Under such circumstances, there is no basis for concluding that Defendant violated the FDCPA by seeking the full amount of Plaintiffs' default. *See, e.g*, *Barlow v. Safety Nat. Cas. Corp*, 3:11-CV-00236-BAJ, 2014 WL 1327922, at *5–6 (M.D. La. Mar. 31, 2014), *aff'd sub nom. Barlow v. Safety Nat. Cas. Corp*., 586 Fed. Appx. 191 (5th Cir. 2014) (seeking to collect on judgment of bond forfeiture did not violate FDCPA where plaintiff did not produce evidence showing that the bond was invalid or unenforceable); *Hollings v. Hollings,* 8 N.J. Super. 552, 554 (Ch. Div. 1950), aff'd, 12 N.J. Super. 57 (App. Div. 1951) (it is inequitable to allow a creditor to quiet title a property, even if the statute of limitations expired on a lender's ability to foreclose, without the creditor first paying the lien in full.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 10**

1

2

    2. <u>Plaintiffs' Claim Alleging SLS Violated the CPA because it Violated the FDCPA Fails and Should be Dismissed with Prejudice.</u>

3

4

Plaintiffs' allegation that because SLS violated the FDCPA, it violated the CPA fails. First, SLS did not violate the FDCPA as set forth in Section A1 above nor did SLS violate the CPA in any other way as set forth in Section A4 below. Plaintiffs' second cause of action must be dismissed with prejudice.

5

6

7

    3. <u>Plaintiffs' Claim Alleging SLS Violated the Washington's Consumer Protection Act because it Violated the Washington Collection Agency Act Fails and Should be Dismissed with Prejudice.</u>

8

9

Plaintiffs allege that SLS violated the CPA because it violated the CAA. To support their assertion, Plaintiffs point to RCW 19.16.250(16) and (21) under the CAA.

10

11

RCW 19.16.250(16) prohibits a collection agency and their employees from threatening to take any action against the debtor which they cannot legally take at the time the threat is made.  This claim fails on its face because Plaintiffs fail to assert a single threat made by SLS against Plaintiffs. The only potential threat SLS could make to Plaintiffs is a threat of foreclosure. Plaintiffs, however, admit that they have not made a single payment on their loan since 2011. SLS threatening to foreclose on Plaintiffs' loan is supported by the law and not an action "they cannot legally take." Therefore, SLS did not violate RCW 19.16.250(16).

12

13

14

15

16

17

18

RCW 19.16.250(21) prohibits a collection agency from collecting or attempting to collect any amount not authorized by law. This claim fails because SLS is entitled to collect all amounts due and owing on the Loan because the statute of limitations has not accrued and even if it did, SLS would still be entitled to all of the amounts due on Plaintiffs' Loan. As such, SLS did not violate RCW 19.16.250(21).

19

20

21

22

23

Finally, even if Plaintiffs could establish a violation of either RCW 19.16.250(16) or (21), Plaintiffs' claim still fails because in order to establish a violation of the CPA by way of proving a

24

25

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 11**

1  CAA violation, Plaintiffs need to demonstrate the alleged violation is the proximate cause of the

2  injury to the Plaintiffs' business or property sustained. *Hangman Ridge Training Stables, Inc. v.*

3  *Safeco Title Ins. Co.*, 105 Wash. 2d 778, 719 P.2d 531 (1986); *see also Seattle Endeavors, Inc. v.*

4  *Mastro*, 123 Wash. 2d 339, 868 P.2d 120 (1994).  First, Plaintiffs fail to allege a single injury to their

5  business or property. An "injury" excludes damages for personal injuries. *Washington State*

6  *Physicians Ins. Exchange & Ass'n v. Fisons Corp.*, 122 Wash. 2d 299, 858 P.2d 1054 (1993)

7  (damages for mental pain and suffering and its objective physical manifestations are not compensable

8  under the CPA). Even if Plaintiffs could correctly identify an injury, there is no causal connection

9  between any alleged injury and SLS's alleged conduct.  By Plaintiffs' own admission, they have not

10  made a single payment on their Loan since 2011. Any injuries are the direct and proximate result of

11  their own conduct and failure to pay their Loan. Therefore, Plaintiffs' third cause of action should be

12  dismissed with prejudice.

> **4.  Plaintiffs' Claim Alleging SLS Violated the Washington Consumer Protection Act Fails and Should be Dismissed with Prejudice.**

15  Under the CPA, unfair methods of competition and unfair or deceptive acts or practices in trade

16  or commerce are unlawful. RCW 19.86.020. A private plaintiff must establish each of the following

17  five elements to prevail on a CPA claim:  (1) an unfair or deceptive act or practice; (2) in trade or

18  commerce; (3) which affects the public interest; (4) injury to plaintiff in his or her business or property;

19  and (5) a causal link between the unfair or deceptive act complained of and the injury suffered.

20  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85, 719 P.2d 531

21  (1986). Failure to establish even one of the CPA elements is fatal to the claim. *Id.* at 793.

22  First, Plaintiffs fail to plead facts sufficient to show SLS engaged in unfair or deceptive acts.

23  This District has explained:  "In determining whether an act is 'deceptive' under the CPA, the court

24  looks not to the defendant's intent, but to whether the act has the capacity to materially deceive a

25  substantial portion of the public." *Smale v. Cellco P'ship*, 547 F. Supp. 2d 1181, 1188 (W.D. Wash.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 12**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

#75100722_v1

2008). An act or practice is unfair if it (1) offends public policy, statutes, or the common law; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) it causes substantial injury to consumers. *Magney v. Lincoln Mut. Sav. Bank,* 34 Wn.App. 45, 57, 659 P.2d 537 (1983). Here, Plaintiffs assert that SLS's collection attempts are unfair and deceptive acts or practices in violation of the FDCPA and CAA. As discussed in detail above, SLS did not violate the FDCPA or CAA. It further did not violate the CPA.

SLS did not engage in a deceptive act when it stated the amount owing on the Loan. There is no binding authority that permits this Court to extinguish individual installment payments based on the statute of limitations. Plaintiffs' claim that the amounts owed were "overstated" is based on an insupportable and highly technical legal argument regarding the statute of limitations, which cannot give rise to a deceptive act. A dispute about the amount owed on a debt based on an untenable legal argument is legally distinct from the kind of misstatement, misrepresentation, or deceptive statement that may give rise to a claim under the CPA. In other words, nothing on the face of Defendants' representation of the amount owed on the Loan is a misrepresentation. The allegedly untimely installment payments were not extinguished by operation of law. And there is no well-settled legal principle that supports Plaintiffs' notion that portions of the Note may be uncollectible under the statute of limitations while others remain collectible. Thus, it was reasonable, legal, and certainly not deceptive, for SLS to pursue all past-due installment payments owing under the Note and Deed of Trust.

Second, SLS's alleged conduct did not implicate the public interest, nor have Plaintiffs alleged facts to support such an allegation. In a private action, a plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion. The following four factors are relevant to the inquiry, though none is dispositive:

(1) whether the defendant committed the alleged acts in the course of his/her business, (2) whether the defendant advertised to the public in general, (3) whether the defendant actively solicited this particular plaintiff, and (4) whether the plaintiff and defendant have unequal bargaining positions.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 13**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn. 2d 820, 835-36, 355 P.3d 1100 (2015).  Plaintiffs allege "SLS's unfair and deceptive practices affect public interest as these actions are capable of repetition and affecting other consumers and homeowners in the state." Compl. ¶ 7.6. This statement is a classic example of a conclusory allegation.  Plaintiffs fail to allege *specific facts* that establish that SLS's alleged conduct impacts the public interest.  Instead, Plaintiffs' allegations are hypothetical at best and do not plausibly show that SLS's alleged conduct affected any Washingtonian other than Plaintiffs.

Third, Plaintiffs have not sufficiently pleaded the causation element under the CPA.  "A causal link is required between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman*, 105 Wn.2d at 792-93.  Plaintiffs must also allege an injury to their business or property.  *Hangman*, 105 Wn.2d at 792. Plaintiffs may only recover for injuries that they demonstrate were proximately caused by a defendant's unfair or deceptive practices. *See Bhatti v. Guild Mfg. Co*., 550 Fed.Appx. 514 (9th Cir. 2013) (rejecting CPA claim premised on DTA violation because the "cause prong" was not satisfied).  Plaintiffs have failed to allege they have suffered injury to business or real property *as a result of* SLS's conduct. Plaintiffs, admittedly, have been in default since September 2011. Any injury now faced by Plaintiffs is a result of the 2011 default.  Their CPA claim fails on that basis alone.

In sum, Plaintiffs have failed to state a claim under the CPA against SLS because they have not alleged facts sufficient to establish the unfair/deceptive acts, public interest, or causation elements.[2] Based on the facts as set forth in the underlying Complaint, Plaintiffs cannot state a claim under the CPA. Accordingly, the CPA claim should be dismissed as to SLS with prejudice.

5.   Plaintiffs' Claim Alleging Negligence Against SLS Fails.

Plaintiffs have not pleaded a cognizable negligence claim against SLS.  Under Washington Law, a common law claim of negligence involves the following well-known elements: "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury."  *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998).

---

[2] In making the foregoing arguments under the CPA, Defendant does not concede that Plaintiffs have properly stated a claim for relief as to any element not specifically referenced in the motion.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH PREJUDICE; CASE NO. 3:20-CV-05461-RBL - PAGE 14**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

1   With regard to the duty element, "a duty to a particular individual will be imposed only upon a showing

2   (allegation) of a definite, established and continuing relationship between the defendant and the actor."

3   *Bailey v. Town of Forks*, 38 Wn. App. 656, 663-64, 688 P.2d 526 (1984), *rev'd on other grounds*, 108

4   Wn. 2d 262, 737 P.2d 1257 (1987), *amended*, 753 P.2d 523 (Wash. 1988).

5           Plaintiffs have failed to state a claim for negligence against SLS for two reasons.  First, they

6   have not alleged a duty owed by SLS that is independent of its contractual duties to Plaintiffs.  As the

7   Washington Supreme Court has explained, "[w]hen no independent tort duty exists, tort does not

8   provide a remedy."  *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn. 2d 380, 389, 241 P.3d 1256

9   (2010).  This principle is also described as the economic loss rule.  *See The Religious and Charitable*

10  *Risk Pooling Trust of the Brothers of Christian Schools and Affiliates v. Tyco Simplexgrinnell,* 2015

11  No. C14-1954-JCC, 2015 WL 575031, at *3 (W.D. Wash. Feb. 11, 2015) ("the 'independent duty' test

12  focuses on whether the injury is traceable to a breach of a tort law duty of care arising independently

13  of the contract, and a careful case-by-case analysis is applied"); *Alejandre v. Bull*, 159 Wn. 2d 674,

14  681-82, 153 P.3d 864 (2007) (rule "prohibits plaintiffs from recovering in tort economic losses to which

15  their entitlement flows only from contract"  because "tort law is not intended to compensate parties for

16  losses suffered as a result of a breach of duties assumed only by agreement") (internal quotations

17  omitted).

18          Second, Plaintiffs have not alleged that the Note or Deed of Trust created a duty of care between

19  the servicer of the loan and the borrower; nor do Plaintiffs allege a common law duty of care.

20          Finally, as explained in detail above, the claim fails for the simple reason that SLS did not

21  attempt to collect amounts not legally owed by Plaintiffs. SLS thus could not have breached any duty

22  to Plaintiffs even if  it were the case that SLS owed any duties.

23          In short, Plaintiffs have not and cannot state a claim for negligence as to SLS under Washington

24  law.  Plaintiffs' negligence claim as to SLS should be dismissed with prejudice.

25  ///

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 3:20-
CV-05461-RBL - PAGE 15**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

#75100722_v1

1

## V.    CONCLUSION

2

For all of the foregoing reasons, Defendant respectfully requests that this Court grant this

3

Motion to Dismiss with Prejudice in favor of Defendant.

4

5

DATED:  May 28, 2020.

6

7

HOLLAND & KNIGHT LLP

8

By: *s/ Garrett S. Garfield*
    Garrett S. Garfield, WSBA No. 48375

9

    E-mail: serve.gsg@hklaw.com
    601 SW Second Avenue, Suite 1800

10

    Portland, OR  97204
    Telephone:  503.243.2300

11

    Fax:  503.241.8014

12

*Attorneys for Defendant Specialized Loan Servicing, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT WITH PREJUDICE; CASE NO. 3:20-
CV-05461-RBL - PAGE 16**

HOLLAND & KNIGHT LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204
Telephone:  503.243.2300

#75100722_v1



This is to certify that this is a true and
_ct copy of the original document.

_____
Escrow Officer

Prepared by: REBECCA PAXSON

LOAN #: ▮▮▮▮▮▮▮

# INTEREST ONLY FIXED RATE NOTE

OCTOBER 10, 2006
*Date*

VANCOUVER
*City*

WASHINGTON
*State*

19701 SE 38TH WAY, CAMAS, WA 98607-8851
*Property Address*

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 77,800.00          (this amount will be called "Principal"), plus interest, to the order of the Lender. The Lender is
Countrywide Bank, N.A.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.   INTEREST**

I will pay interest at a yearly rate of          9.250 %.
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month. This payment will be for interest only for the first 120          months, and then will consist of Principal and interest.
I will make monthly payments on the FIRST          day of each month beginning on
DECEMBER 01, 2006 . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both Principal and interest, it will be applied to interest before Principal. If, on
NOVEMBER 01, 2031 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 599.71          for the first 120          months of this Note, and thereafter will be in the amount of U.S. $ 800.71          . The Note Holder will notify me prior to the date of change in monthly payment.

**4.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment, but not less than U.S. $ NOT APPLICABLE   and not more than U.S. $ NOT APPLICABLE   . I will pay this late charge only once on any late payment.

● Interest Only Fixed Rate Second Note - WASHINGTON
1E562-WA (12/05)(d)

Page 1 of 3



* 2 3 9 9 1 *



* 1 5 1 7 3 7 0 7 1 0 0 0 0 0 1 E 5 6 2 *

Exhibit A
Page 1 of 8

LOAN #: 151737071

**(B) Default**

If I do not pay the full amount of each monthly payment by the date stated in Section 3 above, I will be in default.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described below, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Notice from Note Holder**

If I am in default, the Note Holder may send me a written notice telling me that, if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5.    THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated OCTOBER 10, 2006        , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

**6.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

However, if the Partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term during which my monthly payments consist only of interest as well as during the time that my payments consist of principal and interest. A Partial Prepayment will decrease the amount of the monthly payment for the remainder of the term, however, the Principal and the interest required under this Note will be paid prior to the Maturity Date.

**7.    BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8.    GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who

LOAN #: 151737071

takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
JONATHAN NELSON                        -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

*(Sign Original Only)*

● Interest Only Fixed Rate Second Note - WASHINGTON
1E582-WA (12/05)

Exhibit A
Page 3 of 8

Prepared by: REBECCA.PAXSON

LOAN #: 151737079

# INTEREST ONLY ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps – 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER 10, 2006                    VANCOUVER                    WASHINGTON
    [Date]                              [City]                         [State]

19701 SE 38TH WAY, CAMAS, WA 98607-8851
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 311,200.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Countrywide Bank, N.A.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    6.125 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on   DECEMBER 01, 2006        . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (07/06)(d)                    Page 1 of 5





LOAN #: 151737079

scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on NOVEMBER 01, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,588.42 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of NOVEMBER, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

LOAN #: 151737079

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

LOAN #: 151737079

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Exhibit A
Page 7 of 8

LOAN #: 151737079

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JONATHAN NELSON                                                    -Borrower

_____ (Seal)
                                                                             -Borrower

_____ (Seal)
                                                                             -Borrower

_____ (Seal)
                                                                             -Borrower

*[Sign Original Only]*

● MULTISTATE ARM, ONE-YEAR LIBOR, 10-Year Interest Only Period Note
1E452-XX (07/06)                                   Page 5 of 5

Exhibit A
Page 8 of 8

15

**4235812 DT**
RecFee - $47.00  Pages: 15 - CLARK COUNTY TITLE
Clark County, WA                    10/17/2006 10:54

WHEN RECORDED RETURN TO:
Countrywide Home Loans, Inc.
MS SV-79 Document Processing
PO Box 10423
Van Nuys, CA 91410-0423

---

CCT-111808cm

DOCUMENT TITLE(S):
Deed of Trust-2nd


REFERENCE NUMBER(S) OF DOCUMENTS ASSIGNED OR RELEASED:


GRANTOR:
   1.   Nelson, Jonathan
   2.   Nelson, Margo I.


GRANTEE:
   1.   Countrywide Bank, N.A.


TRUSTEE:
Clark County Title


ABBREVIATED LEGAL DESCRIPTION:
Lot 8, of THE GLEN AT FISHER'S LANDING

Additional Legal Description located on page 3

## "This Deed of Trust is secondary and inferior to that certain Deed of Trust dated October 10, 2006, in favor of Countywide Bank, N.A. recorded concurrently herewith."

TAX PARCEL NUMBER(S):
125853-024, 117032


☐   If this box is checked, then the following applies:
I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording proccessing reqirements may cover up or otherwise obscure some part of the text of the original document.

_____
Signature of Requesting Party

---

Vision Form SIX02WA Rev. (006/12/06)            LPB-01-05(I)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Assessor's Parcel or Account Number:
Abbreviated Legal Description:

                    SEE THE PRELIM

              [Include lot, block and plat or section, township and range]

Full legal description located on page  1

Grantee(s):
CLARK COUNTY TITLE COMPANY
Other names listed on page 2.
_____ [Space Above This Line For Recording Data] _____
                    00111808                     00015173707110006
              [Escrow/Closing #]                       [Doc ID #]

## DEED OF TRUST

                    MIN 1001337-0001736630-6

      THIS DEED OF TRUST is made this TENTH        day of OCTOBER, 2006      , among the
Grantor,
JONATHAN NELSON,and MARGO I. NELSON, husband and wife

(herein "Borrower"),

| WASHINGTON - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS |
|---|

                            Page 1 of 8                          **Form 3848**
                                                                 **Amended 2/99**

VMP®-76N(WA) (0308).03    CHL (07/06)(d)





                                                      Exhibit B
                                                      Page 2 of 15

DOC ID #: 00015173707110006

CLARK COUNTY TITLE COMPANY
1400 WASHINGTON STREET, #100 VANCOUVER, WA 98660-
(herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
Countrywide Bank, N.A.
A NATL. ASSN.                                                                              , ("Lender")
is organized and existing under the laws of THE UNITED STATES                , and has an
address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314                                   .
    BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of CLARK                                     , State of Washington:
LOT 8, THE GLEN AT FISHER'S LANDING, ACCORDING TO THE PLAT THEREOF, RECORDED
IN BOOK "311" OF PLATS, PAGE 170, RECORDS OF CLARK COUNTY, WASHINGTON.

which has the address of
                            19701 SE 38TH WAY, CAMAS                              , Washington
                                      [Street, City]
98607-8851 [ZIP Code], (herein "Property Address");
    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.
    TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated OCTOBER 10, 2006    and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $77,800.00        , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  NOVEMBER 01, 2031  ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.
    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

VMP -76N(WA) (0308).03   CHL (07/06)        Page 2 of 8                          Form 3848

DOC ID #: 00015173707110006

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page 4

Exhibit B
Page 4 of 15

DOC ID #: 00015173707110006

to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  5

Exhibit B
Page 5 of 15

DOC ID #: 00015173707110006

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of (i) the right to reinstate after acceleration, (ii) the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure, and (iii) any other matters required to be included in such notice by applicable law. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page 6

Exhibit B
Page 6 of 15

DOC ID #: 00015173707110006

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the lapse of such time as may be required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of the Property for a period or periods not exceeding a total of 30 days by public announcement at the time and place fixed in the notice of sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto, or to the Clerk of the Superior Court of the County in which the sale took place.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the tenth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** In accordance with applicable law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Use of Property.** The Property is not used principally for agricultural or farming purposes.

VMP -76N(WA) (0308).03      CHL (07/06)          Page 6 of 8                          Form 3848

DOC ID #: 00015173707110006

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____      -Borrower
JONATHAN NELSON

_____      -Borrower
MARGO T. NELSON

_____      -Borrower

_____      -Borrower

*[Sign Original Only]*

-76N(WA) (0308).03      CHL (07/06)      Page 7 of 8      **Form 3848**

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  8

Exhibit B
Page 8 of 15

DOC ID #: 00015173707110006

**STATE OF WASHINGTON**
                                                              } ss:
**County of**   Clark
      On this day personally appeared before me _____
      Jonathan Nelson and Margo I. Nelson _____
_____
_____

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.
      GIVEN under my hand and official seal this ___14th___ day of _____ ____.

_____
Notary Public in and for the State of Washington, residing at
_____
My Appointment Expires on _____

CHERYL MONAHAN
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
JUNE 8, 2007

-76N(WA) (0308).03    **CHL (07/06)**          Page 8 of 8                    **Form 3848**

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  9

Exhibit B
Page 9 of 15

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
REBECCA PAXSON

00111808                    00015173707110006
[Escrow/Closing #]              [Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TENTH                    day of
OCTOBER, 2006        , and is incorporated into and shall be deemed to amend and supplement
the, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
19701 SE 38TH WAY
CAMAS, WA 98607-8851
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
 -7R (0405)       CHL (06/04)(d)          Page 1 of 3            Initials 
VMP Mortgage Solutions, Inc. (800)521-7291                 Form 3150 1/01

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  10

DOC ID #: 00015173707110006

other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
GLEN AT FISHERS LANDING

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the

-7R (0405)        CHL (05/04)          Page 2 of 3                    Initials: ___   Form 3150 1/01

Exhibit B
Page 11 of 15

DOC ID #: 00015173707110006

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JONATHAN NELSON          - Borrower

_____ (Seal)
MARGO I. NELSON          - Borrower

_____ (Seal)
         - Borrower

_____ (Seal)
         - Borrower

VMP -7R (0405)     CHL (06/04)     Page 3 of 3     Form 3150 1/01

DOC ID #: 00015173707110006

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this TENTH                day of
OCTOBER, 2006     , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

19701 SE 38TH WAY, CAMAS, WA 98607-8851

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

**MULTISTATE PUD RIDER** - Single Family/Second Mortgage

Page 1 of 3

 **-207R** (0411)   **CHL (12/05)(d)**

VMP Mortgage Solutions, Inc.                                      **3/99**



Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  13

DOC ID #: 00015173707110006

(the "Declaration"). The Property is a part of a planned unit development known as

GLEN AT FISHERS LANDING

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  14

DOC ID #: 00015173707110006

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
JONATHAN NELSON                                                      - Borrower

_____ (Seal)
MARGO I. NELSON                                                     - Borrower

_____ (Seal)
                                                                   - Borrower

_____ (Seal)
                                                                   - Borrower

-207R (0411)   CHL (12/05)            Page 3 of 3                          3/99

Clark Auditor Tue Oct 17 10:54:32 PDT 2006 4235812 Page  15

Exhibit B
Page 15 of 15

x


Specialized Loan

# Servicing

Part of the Computershare Group
P.O. Box 636005
Littleton, CO 80163-6005
1-800-315-4515 (4757)

Pg 1 of 2

+ 0980912 000026966 09SFC2 0930126
JONATHAN NELSON
19701 SE 38TH WAY
CAMAS WA 98607-8851



April 16, 2019

Re:  SLS Loan Number:  ▮▮▮▮▮▮
     Property Address:    19701 SE 38th Way
                         Camas, WA 98607

**Default Notice and Notice of Intent to Foreclose**

Dear Jonathan Nelson,

The Note on the above-referenced loan is now in default as a result of your failure to pay the 09/01/11 payment and the payments due each month thereafter, as provided for in said Note. You are hereby notified that to cure such default you are required to pay to this office all past due payments plus late charges and any payments that may become due between the date of this notice and the date the default is cured. The amount required to cure the arrears as of 04/16/19 is $54,058.28. You have thirty three (33) days from the date of this letter to cure the default. We urge you to immediately, upon receipt of this letter, contact our Customer Assistance Department at the number provided below to obtain the updated amount required to reinstate your loan.

| | |
|---|---|
| Number of Delinquent Payments: | |
| 92 since 08/01/11 | $54,058.28 |
| Late Charges Due: | $0.00 |
| Recoverable Corporate Advances: | $0.00 |
| Other Fees: | |
| (Phone pay, NSF, Property Inspections, etc.) | $0.00 |
| Less: Funds in Unapplied | $0.00 |
| Total Amount Due: | $54,058.28 |

**This notice does not affect your ability to apply for or be evaluated for a foreclosure prevention option or any pending loss mitigation option that may have been extended.**

Failure to pay the total amount due under the terms and conditions of your Deed of Trust/Mortgage by 05/19/19 may result in acceleration of the entire balance outstanding under the Note including, but not limited to, the principal, interest and all other outstanding charges and costs, and commencement of foreclosure of the Trust Deed/Mortgage which is security for your Note. Please be advised that any extension of time or forbearance in the exercising of any right or remedy as provided for in the Deed of Trust/Mortgage shall not constitute a waiver of or preclude the exercising of any right or remedy.

You have the right to reinstate the Note after acceleration as provided by law and you have the right to bring court action to assert the nonexistence of default or any other defense you have to acceleration and sale.

If your loan is not brought current, inspections of your property will be made and you will be assessed fees for that purpose as permitted under state law. Additionally, if your property is found to be vacant and unsecured, the mortgage holder will have it secured and will charge you for the cost of securing. You may also be liable for reasonable attorney fees and costs incurred in connection with any proceedings on the Note and Trust Deed and such other costs as may be allowed by law. In addition, you may be liable for any deficiency that may be established as a result of the foreclosure action unless precluded by a bankruptcy discharge.

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado  80129  PH (800) 306-6062

Exhibit C

Page 1 of 3

04/16/19   ████████         0980912 000026966 09SFC2 0930126

**In accordance with the Fair Debt Collection Practices Act, you are hereby given notice of the following:**

1.  **Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires Specialized Loan Servicing LLC to provide you with the amount of the debt. As of 04/16/19, the amount of the unpaid principal balance is $76,228.02. This letter is in no way intended as a payoff statement and you must not rely upon this letter for purposes of paying off your mortgage.**
2.  **Specialized Loan Servicing LLC is the current servicer for the current owner of the loan. If you request in writing within thirty (30) days after you receive this notice, we will provide you with the name and address of the original owner if different than the current owner.**
3.  **Unless within 30 days after you receive this notice you dispute the validity of the debt or a portion thereof, the debt will be assumed to be valid. If you notify us in writing within 30 days after you receive this notice that you dispute the debt or a portion thereof, we will obtain and mail to you verification of the debt.**
4.  **THIS COMMUNICATION IS FROM A DEBT COLLECTOR. PLEASE BE ADVISED THAT THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, PLEASE BE ADVISED THAT THIS LETTER CONSTITUTES NEITHER A DEMAND FOR PAYMENT OF THE CAPTIONED DEBT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE.**

If you believe that you are entitled to the benefits as outlined in the Servicemembers' Civil Relief Act, you should promptly provide us with evidence of your active duty status.

Specialized Loan Servicing LLC would like you to be aware that if you are unable to make payments or resume payments within a reasonable period of time due to a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for Homeownership Counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD approved nonprofit organizations serving your area.

There may be options to you to assist you in avoiding foreclosure. These options include, but are not limited to the following:

- · Modifying your loan terms
- · Temporarily lowering monthly payments
- · Scheduling payments to cure the arrears
- · Temporary suspension of payments

In order to discuss your loan options, you should gather the following documents*:

- · Verification of Income
- · Prior year's W-2 or tax return (if self employed)
- · Copy of P&L ( if self employed)
- · Letter of Hardship
- · Current bank statements
  ** Some options may require other or additional documentation

"You may contact the Department of Financial Institutions, the Washington State Bar Association, or the statewide civil legal aid hotline for possible assistance or referrals."

**NOTE: Washington does not have a statewide legal aid hotline. The closest thing is the CLEAR line at 1-888-201-1014. The following information is from the State Bar's Website on referral services:

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado  80129  PH (800) 306-6062

Exhibit C
Page 2 of 3

04/16/19   ▬▬▬▬   0980912 000026966 09SFC2 0930126                    Pg 2 of 2

The lawyer referral services are for the general public - there are no financial eligibility requirements. The lawyers charge their regular fees for services after the initial consultation. These are no low-cost or reduced fee attorney panels.

People seeking low cost or free legal services should contact CLEAR at 1-888-201-1014.

**Most programs will refer to surrounding counties.**

Clark County:

    Southwest Washington
    Lawyer Referral Service
    Phone: 360-695-0599

King County:

    King County
    Lawyer Referral Service
    Phone: 206-267-7010

Kitsap County:

    Kitsap County
    Lawyer Referral Service
    Phone: 360-373-2426

Lewis County:

    Lewis County
    Lawyer Referral Service
    Phone: 360-748-0430

Pierce County:

    Tacoma_Pierce County
    Bar Lawyer Referral
    Phone: 253-383-3432

Snohomish County:

    Snohomish County
    Bar Referral Service
    Phone: 425-388-3018

Spokane County:

    Spokane County
    Bar Association
    Phone: 425-388-3018
    **http://www.spokanebar.org/** click on "Online Lawyer Referral Service"



If you have any questions, regarding this letter, please contact SLS at 800-306-6062 Monday through Friday, from 6:00 a.m. to 6:00 p.m. (MT). TDD number 800-268-9419 Monday - Friday, from 8:00 a.m. to 5:00 p.m. (MT).

Specialized Loan Servicing LLC requests that all payments be made in **certified funds, cashier's check, or money order(s)** payable to Specialized Loan Servicing LLC and mailed to: **Attention: Customer Assistance Department** at one of the below addresses **(always include your Loan Number with your payment)** :

| **VIA Regular Mail** | **VIA Over Night Address** | **VIA Western Union Quick Collect** |
|---|---|---|
| Specialized Loan Servicing LLC | Specialized Loan Servicing LLC | Code City: PAYSLS |
| PO Box 60535 | 8742 Lucent Blvd, Suite 300 | Code State: CO |
| City of Industry, CA 91716-0535 | Highlands Ranch, CO 80129 | Reference: Loan Number |

The matters discussed herein are of extreme importance. We trust that you will give them appropriate attention.

SPECIALIZED LOAN SERVICING LLC
Customer Assistance Department

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado  80129  PH (800) 306-6062

Exhibit C
Page 3 of 3