HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JONATHAN NELSON and MARGO
NELSON, individually and on behalf of
their marital community,

                    Plaintiff,

    v.

SPECIALIZED LOAN SERVICING,
LLC, a foreign limited liability
company,

                    Defendant.

CASE NO. 3:20-cv-05461-RBL

ORDER ON DEFENDANT'S MOTION
TO DISMISS FOR FAILURE TO
STATE A CLAIM

## INTRODUCTION

THIS MATTER is before the Court on Defendant Specialized Loan Servicing, LLC's

(SLS) Motion to Dismiss for Failure to State a Claim. Dkt. # 10. Plaintiffs Jonathan and Margo

Nelson assert a variety of consumer protection claims arising from SLS's alleged attempts to

obtain payment of sums delinquent since 2011 under threat of foreclosure. Because Washington

has a six-year statute of limitations on contractual claims, the Nelsons claim that SLS's conduct

constituted deceptive and unlawful debt collection activity. SLS argues that the statute of

limitations had not expired on these debts and, even if it had, SLS's conduct was still lawful. The

Court agrees and GRANTS SLS's Motion to Dismiss.

ORDER ON DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM - 1

# BACKGROUND

According to the Complaint, the Nelsons purchased a home in Camas, Washington, in 2006. To cover the cost, they executed two promissory notes and deeds of trust with Countrywide Bank NA, one for $311,200 and a second for $77,800. The Nelsons initially made their payments but began struggling to pay off the second Note in 2011. After attempting to obtain a modification, the Nelsons stopped paying on September 1, 2011 and have not made a payment since. This constituted a default under the terms of the Note. Dkt. # 10, Ex. A, at ¶7(B) (defining "default").

In March of 2015, the Nelsons were informed that servicing for their second loan had been assigned to SLS. The Nelsons continued to receive monthly statements from SLS. On April 16, 2019, they received a letter from SLS titled "Default Notice and Notice of Intent to Foreclose." Complaint, Dkt # 1-1, at 4. The letter stated:

> The Note on the above-referenced loan is now in default as a result of your failure to pay the 09/01/11 payment and the payments due each month thereafter, as provided for in said Note. You are hereby notified that to cure such default you are required to pay to this office all past due payments plus late charges and any payments that may become due between the date of this notice and the date the default is cured. The amount required to cure the arrears as of 04/16/19 is $54,058.28. You have thirty three (33) days from the date of this letter to cure the default. We urge you to immediately, upon receipt of this letter, contact our Customer Assistance Department at the number provided below to obtain the updated amount required to reinstate your loan.
>
> . . .
>
> Failure to pay the total amount due under the terms and conditions of your Deed of Trust/Mortgage by 05/19/19 may result in acceleration of the entire balance outstanding under the Note including, but not limited to, the principal, interest and all other outstanding charges and costs, and commencement of foreclosure of the Trust Deed/Mortgage which is security for your Note.

1   Dkt. # 10, Ex. C.[1] The information in the letter correspond to the Deed of Trust, which allows the

2   lender to accelerate the loan and invoke the power of sale with adequate notice and time to cure.

3   Dkt. # 10, Ex. B, at ¶ 17.

4        The Nelsons continued to receive monthly statements from SLS seeking the amount

5   "currently due for the 09/01/11 payment," with the amount due increasing each time. *Id*. at 5. On

6   July 9, 2019, they received a "Notice of Pre-Foreclosure Options" from SLS. *Id*. After the

7   Nelsons requested information from SLS, they were informed on September 11, 2019 that the

8   account was "currently due for September 1, 2011, in the amount of $587.59 and due for every

9   payment that has become due thereafter." Complaint, Dkt # 1-1, at 5. SLS further stated that the

10  "amount due to reinstate the account is $64,144.19." *Id*.

11       The Nelsons filed this action on April 17, 2020 and assert five claims. First, they claim

12  that SLS violated several provisions of the Fair Debt Collections Practices Act. Specifically, the

13  Nelsons claim that SLS's attempt to collect sums for which the statute of limitations had run

14  amounted to the use of: harassment, oppression, or abuse to collect a debt, 15 U.S.C. § 1692d;

15  "false representation of the character, amount, or legal status" of a debt, § 1692e(2)(A); a threat

16  to take "action that cannot legally be taken," § 1692e(5); "false representation or deceptive

17  means to collect or attempt to collect any debt," § 1692e(10); "unfair or unconscionable means to

18  collect or attempt to collect" a debt, § 1692f; and an attempt to collect an amount not permitted

19  by law, § 1692f(2). Complaint, Dkt. # 1-1, at 7-9. They also assert a *per se* violation of the

20  Washington Consumer Protection Act (CPA) based on the FDCPA claim. *Id*. at 9.

21

22  _____

    [1] Although the Complaint does not attach the letter itself, it relies on the letter's content. The
23  Court therefore can and will take judicial notice of the full letter and underlying Note and Deed
    of Trust, which SLS has provided. *See Leadbetter v. Comcast Cable Communications, Inc.*, No.
24  C05-0892RSM, 2005 WL 2030799 (W.D. Wash. Aug. 22, 2005).

1    The Nelsons' third claim is based on Washington's Collection Agency Act (WCAA). *Id.*

2    at 9. They assert that SLS violated the WCAA by threatening to take action that it could not

3    legally take, RCW 19.16.250(16); and attempting to collect an amount other than the principal,

4    allowable interest, authorized collection costs or handling fees, and attorney's fees/court costs,

5    RCW 19.16.250(21). *Id.* at 9-10. The Nelsons assert this claim too as a *per se* CPA violation.

6    Fourth, the Nelsons claim that SLS's attempts to collect amounts not legally owed were

7    "unfair or deceptive acts or practices" in violation of the CPA. *Id.* at 11. Finally, the Nelsons

8    assert a claim for negligence based on the same underlying conduct. *Id.* at 11-12.

9    **DISCUSSION**

10    Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable

11    legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri*

12    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege

13    facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

14    678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual

15    content that allows the court to draw the reasonable inference that the defendant is liable for the

16    misconduct alleged." *Id.* The allegations must be "enough to raise a right to relief above the

17    speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the court

18    must accept as true the complaint's well-pled facts, conclusory allegations of law and

19    unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez*

20    *v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*,

21    266 F.3d 979, 988 (9th Cir. 2001). On a 12(b)(6) motion, "a district court should grant leave to

22    amend even if no request to amend the pleading was made, unless it determines that the pleading

23

24

ORDER ON DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM - 4

1    could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal.*

2    *Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

3          The Nelsons base all their claims on one theory: that it was deceptive for SLS to seek

4    payment of, and threaten foreclosure over, loan installments for which the statute of limitations

5    had expired. SLS argues that this theory is flawed because the statute of limitations had not run

6    on these installments and, even if it had, no legal principle prohibits collection via nonjudicial

7    foreclosure. The Nelsons responds that the communications from SLS would mislead the "least

8    sophisticated debtor" into believing that they must pay the time-barred sums or risk late fees,

9    additional interest, or loss of their home. *See Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d

10   1190, 1197 (9th Cir. 2019) (suggesting that a consumer could be misled by a communication

11   falsely implying the ability to sue over time-barred debts).

12         The Nelsons' initial premise that some of the delinquent payments SLS identified were

13   beyond the statute of limitations is correct. Under Washington law, "[a]n action upon a contract

14   in writing . . . shall be commenced within six years." RCW 4.16.040. When a borrower promises

15   to repay a note in installments, "the statute of limitations runs against each installment from the

16   time it becomes due; that is, from the time when an action might be brought to recover it." *Jarvis*

17   *v. Fed. Nat'l Mortg. Ass'n*, No. C16-5194-RBL, 2017 WL 1438040, at *2 (W.D. Wash. Apr. 24,

18   2017), *aff'd*, 726 F. App'x 666 (9th Cir. 2018) (quoting *Herzog v. Herzog*, 23 Wn.2d 382, 388

19   (1945)); *see also Edmundson v. Bank of Am.*, 194 Wash. App. 920, 930-31 (2016) (The statute of

20   limitations accrues on the date of a missed payment "for that missed payment only."). SLS's

21   2019 communications identified missed payments as far back as 2011; these were clearly beyond

22   the statute of limitations.

23

24

If those time-barred payments were the only delinquent installments, the Nelsons might be correct that SLS could not have threatened foreclosure. Washington has a statute of limitations for judicial and private foreclosure actions that is tied to the enforceability of the underlying debt. *Walcker v. Benson & McLaughlin, P.S.*, 79 Wash. App. 739, 746 (1995) (holding that the statute of limitations for judicial foreclosure in RCW 7.28.300 applies to nonjudicial foreclosure via RCW 61.24.020). But while RCW 7.28.300 allows a borrower to quiet title when their loan obligations are time-barred, it does not dictate whether a mortgagee can recoup payments from over six years ago when a more recent missed payment supports nonjudicial foreclosure.

The weight of authority suggests full recoupment is permitted. "The running of the statute of limitations bars the remedy but does not extinguish the debt." *Jordan by Prappas v. Bergsma*, 63 Wash. App. 825, 828 (1992). This is because "a statute of limitation does not invalidate a claim, but rather 'deprives a plaintiff of the opportunity to invoke the power of the courts in support of an otherwise valid claim.'" *Walcker*, 79 Wash. App. at 743 (quoting *Stenberg v. Pacific Power & Light Co.*, 104 Wash.2d 710, 714 (1985)). The Nelsons present no authority stating that existing obligations, though ineligible for judicial enforcement, cannot be enforced through valid nonjudicial means. Indeed, this Court has held that a secured creditor's lien is enforceable even after the underlying loan has been discharged in bankruptcy. *See Jarvis*, 2017 WL 1438040, at *3.

There was therefore nothing deceptive about SLS's communications. Although *Stimpson* theorized that the "least sophisticated debtor" might assume a letter to collect on credit card debt implies judicial enforceability, that assumption does not apply in the home mortgage context. 944 F.3d at 1196-97. As SLS's Notice of Default and Notice of Intent to Foreclose made clear,

the Nelsons' obligations were enforceable through *foreclosure*, not a lawsuit. The Nelsons had missed all their payments for the past six years, so SLS was justified to present foreclosure as a possibility. SLS was also justified to require payment of the full debt to reinstate the loan, since the mortgagee could recover this amount by conducting a private sale. In short, a communication correctly informing a borrower that they may be foreclosed upon if they don't fulfill their obligations on a secured note is not deceptive. The Nelsons' claims cannot succeed.

## CONCLUSION

SLS's Motion to Dismiss is GRANTED. Because the Nelsons' claims are premised on a flawed legal theory, they are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 27th day of August, 2020.

Ronald B. Leighton
United States District Judge